## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NICOLE WYNN, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL FOLLIES, INC. | ) | |
| d/b/a THE CHEETAH and | ) | |
| WIILIAM HARGOOD, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiff, by and through her undersigned attorneys, and asserts her claims against Defendants under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA"), for due but unpaid minimum and overtime wages and other relief on the grounds set forth as follows:

## INTRODUCTION

1.

This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. 201, et seq. by Plaintiff, a former entertainer (a/k/a "dancer") employed by Defendants at the Cheetah nightclub, based on Defendants' common policy and

practice of misclassifying all entertainers as independent contractors and therefore exempt from the FLSA's minimum wage and overtime pay requirements. As a result, Plaintiff and all other entertainers regularly received less than the minimum wage of $7.25 per hour during each workweek and regularly worked in excess of forty (40) hours per workweek without receiving overtime wages as required by the FLSA.

## **PARTIES**

2.

Plaintiff is a natural person and former employee of Defendants, having worked as an entertainer during the relevant time period of November, 2012 through February, 2013. Plaintiff is a resident within the Northern District of Georgia.

3.

Defendant International Follies, Inc. is a domestic for profit Corporation with its principal place of business located at 887 Spring Street NW, Atlanta, Georgia, 30308.  On information and belief Defendant International Follies is the legal owner of the Cheetah club.  Defendant may be served with a copy of the summons and complaint by leaving a copy with its registered agent for service Mr. William Hagood located at 887 Spring Street, NW, Atlanta, Georgia 30308.

4.

Defendant International Follies, Inc. is subject to the personal jurisdiction of this Court.

5.

Defendant William Hagood is a natural person who exercises complete control over all the operations and procedures at the establishment known as the Cheetah located at 887 Spring Street NW, Atlanta, Georgia 30308.

6.

On information and belief Defendant Hagood is the beneficial owner of the Cheetah and is a resident within the Northern District of Georgia.  Defendant Hagood may be served with a copy of the summons and complaint at the following address: 887 Spring St NW, Atlanta, GA 30308.

7.

Defendant Hagood is subject to the personal jurisdiction of this Court.

## JURISDICTION AND VENUE

8.

The jurisdiction of this Court is proper pursuant to Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, as this case arises under the FLSA, a federal statute which affects interstate commerce.

9.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendants regularly conduct business in this judicial district, a substantial portion of the events giving rise to the claims herein arose in this judicial district, and Defendant International Follies, Inc. resides in this judicial district.

**FACTUAL ALLEGATIONS**

10.

Plaintiff brings this action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA") for failure to pay minimum wage and overtime compensation for herself only.

11.

Plaintiff was employed from, among other times, November, 2012 through February, 2013 as a female entertainer at the Cheetah, a gentleman's club whose primary business is to provide entertainment in the form of nude and semi-nude dancers and the sale of alcoholic beverages

12.

At all times during Plaintiff's employment, Defendants have improperly categorized Plaintiff and all entertainers working at the Cheetah as "independent contractors".

4

13.

During the relevant time period of November, 2012 through February, 2013, Defendants did not require plaintiff or other entertainers to have any specialized skills, training or knowledge.

14.

At all times material hereto, the position of entertainer did not require a four-year college degree.

15.

At all times material hereto, the position of entertainer did not require a professional license but only a City of Atlanta work permit.

16.

Defendant International Follies was an "employer" of Plaintiff as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

17.

Defendant International Follies is an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1) was so in 2012 and 2013.

18.

In 2012, Defendant International Follies had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

19.

In 2012, Defendant International Follies had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

20.

Such items included wine, beer, liquor and other alcoholic products; food and food service items; computers; music equipment; office furniture and office supplies.

21.

Throughout 2012 and 2013, Defendant International Follies had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

22.

Throughout 2012 and 2013, Defendant International Follies had two or more employees who regularly processed credit card transactions involving customers residing in states other than the State of Georgia.

23.

Throughout 2012 and 2013, Defendant International Follies had two or more employees who regularly processed credit card transactions involving financial institutions located in states other than the State of Georgia.

24.

Throughout 2012 and 2013, Defendant International Follies had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

25.

Upon information and belief, in 2012, Defendant International Follies had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

26.

In 2013, Defendant International Follies had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

27.

In 2013, Defendant International Follies had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

28.

Upon information and belief, in 2013, Defendant International Follies had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

29.

Plaintiff was an "employee" of Defendant as defined in 29 U.S.C. § 203(e)(1).

30.

The work done by Plaintiff as an entertainer was an integral and essential part of Defendant's business of operating a gentleman's club.

31.

Defendant William Hagood was an "employer" of Plaintiff as defined in FLSA § 3(d), 29 U.S.C. § 203(d) inasmuch as he was acting directly or indirectly in the interest of Defendant International Follies in his interactions with Plaintiff and all others who worked at The Cheetah, and he controlled the terms and conditions of employment of Plaintiff and all others on a day to day basis.

32.

Specifically, Defendant Hagood was and is an owner and the President of Defendant International Follies, Inc.

33.

Defendant Hagood had authority and exercised control over the finances and operations of Defendant International Follies, Inc.

34.

Defendant Hagood exercised managerial authority and control over the day to day business of Defendant International Follies, Inc., including the Plaintiff and other employees.

35.

Defendant Hagood exercised the ultimate control over hiring and firing employees, including Plaintiff.

36.

Defendant Hagood had authority and control over Defendant International Follies, Inc.'s common policy of classifying entertainers such as Plaintiff as independent contractors who were paid no wages.

37.

Defendant Hagood had authority over the terms of Plaintiff's working conditions, including all applicable rules for the Club's entertainers.

38.

During the relevant time period of November, 2012 through February, 2013, Defendants established specific work schedules for Plaintiff and other entertainers, including dancer attire, dancer appearance, minimum number of work shifts per week, stage rotation scheduling, work attendance, time of departure, consumption of food and beverages, and interactions with customers.

39.

During the relevant time period of November, 2012 through February, 2013, Defendants set the price entertainers were allowed to charge for dances.

40.

During the relevant time period of November, 2012 through February, 2013, Plaintiff the other entertainers were required to attend mandatory meetings at

Defendants' place of business, but were not paid for their attendance at those meetings.

41.

During the relevant time period of November, 2012 through February, 2013, Defendants financed all advertising and marketing efforts undertaken on behalf of the Cheetah; made capital investments in the facilities, maintenance, sound system, lights, food, beverage and inventory; and made all hiring decisions regarding wait staff, security, entertainer, managerial and all other employees at the Cheetah.

42.

During the relevant time period of November, 2012 through February, 2013, Defendants established a variety of written guidelines and policies which governed Plaintiff's and other entertainers conduct at the Cheetah.

43.

If entertainers were late for work, failed to appear for a scheduled shift, or were deemed to have violated any of the Cheetah's rules, they were charged additional fees or fines or were terminated.

44.

At all times material hereto, Defendants threatened Plaintiff and the other entertainers with disciplinary actions including but not limited to verbal warnings,

imposition of fines or termination for infractions of Defendants' established policies and rules.

45.

Plaintiff has been subject to a variety of these fees and fines.

46.

During the relevant time period of November, 2012 through February, 2013, Defendants required entertainers, including Plaintiff, to pay specific fees, such as a "tip out" or a "bar fee" in order to work on any given shift.

47.

During the relevant time period of November, 2012 through February, 2013, the specific amount entertainers, including Plaintiff, were required to pay has varied, but typically totaled $70-$80 per shift for Plaintiff.

48.

The fees described in ¶¶ 43 through 47 of this Complaint constitute unlawful "kickbacks" to the employer within the meaning of the Fair Labor Standards Act.

49.

During the relevant time period of November, 2012 through February, 2013, Plaintiff typically worked 4 or 5 shifts per week, from 7:30 p.m. until 3:00 a.m.

50.

Plaintiff typically arrived at the Cheetah at 7:00 p.m. to do her fair, put on her makeup and dress in the attire required by Defendants to work as an entertainer. This preliminary work constitutes work for the benefit of the employer and for which wage compensation is required.

51.

Plaintiff and other entertainers were not permitted to leave the club until after "last call" at 3:00 a.m.

52.

During the relevant time period of November, 2012 through February, 2013, Plaintiff worked over forty hours in some of the weeks she worked for Defendants.

53.

During the relevant time period of November, 2012 through February, 2013, Plaintiff was not guaranteed at least $455.00 per week in wages.

54.

Defendants have never paid Plaintiff or other entertainers any amount as wages whatsoever.

55.

During the relevant time period of November, 2012 through February, 2013, the only source of work related income received by Plaintiff were gratuities she received from customers.

56.

Upon information and belief, by misclassifying entertainers such as Plaintiff as independent contractors and not as employees, Defendants have not relied on any letter ruling from the Department of Labor indicating that such practice was permitted under the FLSA.

57.

Upon information and belief, in 1993, the Department of Labor issued a letter ruling to attorney Scott Schulten who was representing a group of adult entertainment club owners (including Defendant Hagood) holding female entertainers such as Plaintiff to be employees entitled to payment of minimum wages and not to be independent contractors.

58.

Upon information and belief, by misclassifying entertainers such as Plaintiff as independent contractors and not as employees during the years 2012 and 2013, Defendants have not relied on any legal advice indicating that such practice was permitted under the FLSA.

59.

Upon information and belief, at all times material hereto, Defendants have failed to "post and keep posted a notice explaining the [FLSA] . . . in [a] conspicuous place[]," as required by 29 CFR § 516.4.

60.

Defendants have failed and refused to adequately compensate Plaintiff at the legally required minimum wage for all work hours up to forty (40) in any and every given workweek, and have willfully refused to rectify the situation.

61.

Defendants are liable to Plaintiff for compensation for any and all time worked up to forty (40) hours per week at the minimum wage rate of $7.25 per hour, plus the return of all kickbacks improperly collected from Plaintiff.

62.

Defendants' conduct constitute willful violations of 29 U.S.C. §§ 206 and 215 of the FLSA, entitling Plaintiff to all relief afforded under the FLSA, including the application of a three (3) year statute of limitations, the award of liquidated damages, and attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216.

63.

Defendants knew, or showed reckless disregard for the fact that they misclassified Plaintiff and other entertainers as independent contractors, and accordingly failed to pay these individuals the minimum wage and failed to pay overtime at the required rate under the FLSA.

64.

During the relevant time period of November, 2012 through February, 2013, Plaintiff was not exempt from the minimum or overtime wage requirements of the FLSA.

65.

Upon information and belief, Defendants failed to maintain records of the number of hours worked by Plaintiff between November, 2012 and February, 2013.

## CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF 29 U.S.C. §§ 206 AND 215 AGAINST BOTH DEFENDANTS
### (Minimum Wage Violations)

66.

Paragraphs 1 through 65 are incorporated herein by this reference.

67.

At all relevant times, Plaintiff was entitled to be paid $7.25 for each and every hour worked for Defendants in a given workweek.

68.

Defendants regularly failed to pay Plaintiff the equivalent of $7.25 per hour free and clear for each hour worked for Defendants in any and all given workweeks.

69.

Defendants' failure to compensate Plaintiff the equivalent of $7.25 per hour for each hour worked for Defendants in any and all given workweeks is a violation of §§ 206 and 215 of the Fair Labor Standards Act of 1938, as amended.

70.

Defendants' violation of §§ 206 and 215 of the Fair Labor Standards Act is intentional and willful.  Said violation gives rise to a claim for relief under the FLSA for unpaid minimum wages compensation for three years prior to the filing of this Complaint, through the date of judgment in this action, liquidated damages in an amount equal to the unpaid compensation, declaratory relief, and reasonable attorneys' fees and expenses of litigation, pursuant to 29 U.S.C. § 216.

## COUNT TWO

## VIOLATION OF 29 U.S.C. §§ 207 AND 215 AGAINST BOTH DEFENDANTS
**(Overtime Pay Violations)**

71.

Paragraphs 1 through 65 are incorporated herein by this reference.

72.

Throughout Plaintiff's employment with Defendants, Plaintiff regularly worked in excess of forty (40) hours per week.

73.

Defendants paid Plaintiff no wages at all for the overtime hours worked by her.

18

74.

Defendants were legally required to pay Plaintiff at the rate of time and one half of the minimum wage rate for all hours worked in excess of forty (40) in any and every given workweek.

75.

Defendants have failed and refused to adequately compensate Plaintiff at the legally required overtime wage for all work hours over forty (40) in any and every given workweek, and have willfully refused to rectify the situation.

76.

Defendants' failure to compensate Plaintiff at the overtime rate of time and one half of minimum wage for all hours actually worked over forty (40) hours per week is a violation of §§ 207 and 215 of the Fair Labor Standards Act of 1938, as amended. Such violation is intentional and willful.  Said violation gives rise to a claim for relief under the FLSA for unpaid overtime wage compensation for three years prior to the filing of this Complaint, through the date of judgment in this action, liquidated damages in an amount equal to the unpaid compensation, declaratory relief, and reasonable attorneys' fees and expenses of litigation, pursuant to 29 U.S.C. § 216.

**WHEREFORE**, Plaintiff requests that this Court:

(a)     Take jurisdiction of this matter;

(b)     Issue an Order holding each of the Defendants to be an "employer" as that term is defined under the FLSA;

(c)     Grant a trial by jury as to all matters properly triable to a jury;

(d)     Issue a judgment declaring that Plaintiff was an employee of Defendants and was covered by the provisions of the FLSA and that Defendants have failed to comply with the requirements of the FLSA;

(e)     Award Plaintiff proper payment of minimum wages for each hour worked from three years preceding the filing of this Action, and liquidated damages equaling 100% of that amount, as required by the FLSA;

(f)     Award Plaintiff a return of all kickbacks paid by Plaintiff from three years preceding the filing of this Action, and liquidated damages equaling 100% of that amount, as required by the FLSA;

(g)     Award Plaintiff proper payment for each overtime hour worked from three years preceding the filing of this Action, calculated at the rate of time and one half the applicable minimum wage which should have

20

been paid to Plaintiff by Defendants, and liquidated damages equaling

100% of the overtime wages due to Plaintiff, as required by the FLSA;

(h)     Award Plaintiff prejudgment interest on all amounts owed;

(i)      Award Plaintiff nominal damages;

(j)      Award Plaintiff her reasonable attorneys' fees and costs of litigation

pursuant to 29 U.S.C. § 216(b); and

(k)     Award any and such other further relief this Court deems just, equitable

and proper.

Respectfully submitted this 3rd day of November 2015.

> */s/ Mitchell D. Benjamin*
> Mitchell D. Benjamin
> Georgia Bar No. 049888
> Charles R. Bridgers
> Georgia Bar No. 080791
> Matthew W. Herrington
> Georgia Bar No. 275411

**DELONG, CALDWELL, BRIDGERS,**
**FITZPATRICK & BENJAMIN, LLC**
3100 Centennial Tower
101 Marietta Street, NW
Atlanta, Georgia 30303
(404) 979-3150 Telephone
(404) 979-3170 Facsimile
benjamin@dcbflegal.com
charlesbridgers@dcbflegal.com
matthew.herrington@dcbflegal.com     ATTORNEYS FOR PLAINTIFF